**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HELIOS STREAMING, LLC, and IDEAHUB, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-1792-CFC-SRF |
| VUDU, INC., | ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this patent infringement action is defendant Vudu, Inc.'s ("Vudu") partial motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (D.I. 10) For the following reasons, I recommend that the court GRANT Vudu's partial motion to dismiss.

## II. BACKGROUND

In June and August 2018, plaintiff Ideahub, Inc. ("Ideahub") acquired the following patents: United States Patent Numbers 10,027,736 ("the '736 patent"), 10,270,830 ("the '830 patent"), 10,277,660 ("the '660 patent"), 10,313,414 ("the '414 patent"), 10,356,145 ("the '145 patent"), 10,362,130 ("the '130 patent"), 10,375,373 ("the '373 patent"), 8,645,562 ("the '562 patent"), 8,909,805 ("the '805 patent"), 9,325,558 ("the '558 patent"), and 9,467,493 ("the '493 patent") (collectively, the "patents-in-suit"). (D.I. 2 at ¶ 27) Each of the patents-in-suit "claims technologies for providing adaptive HTTP[2] streaming services using metadata of media content."

---

[1] The briefing and related filings associated with the pending motion are found at D.I. 13, D.I. 17, D.I. 18, D.I. 25, and D.I. 26.
[2] The complaint defines "HTTP" as "Hypertext Transfer Protocol." (D.I. 2 at ¶ 10)

(*Id.* at ¶¶ 10-20) These technologies are "fundamental to Dynamic Adaptive Streaming over HTTP ('DASH'), a media-streaming model for delivering media content." (*Id.* at ¶ 22) The patented DASH technologies have been incorporated into standards for dynamic adaptive streaming delivery of MPEG media known as "MPEG-DASH" standards. (*Id.* at ¶ 24) MPEG-DASH technologies break media content into smaller parts made available at a variety of bitrates to improve streaming quality. (*Id.* at ¶ 25)

Plaintiff Helios Streaming, LLC ("Helios;" together with Ideahub, "Plaintiffs") obtained an exclusive license to the patents-in-suit in August 2018. (*Id.* at ¶ 28) In a letter dated August 23, 2018, Helios notified Vudu of its DASH patent portfolio in an effort to license the patents to Vudu. (D.I. 13, Ex. 1)[3] The letter states that, "[b]ased on our review of the Vudu website . . ., as well as Vudu apps on various types of electronic devices, we believe that Walmart would benefit from a license under the DASH patent portfolio." (*Id.*, Ex. 1 at 1) The parties subsequently exchanged correspondence and Helios provided information regarding the conveyance of an exclusive license from Ideahub to Helios, but Vudu allegedly did not engage in substantive licensing discussions with Helios. (D.I. 2 at ¶¶ 42-45, 61-64, 80-83, 99-102, 118-121, 153-156, 171-174, 189-192, 207-210, 225-228) On September 24, 2019, Plaintiffs filed this patent infringement action against Vudu, alleging induced infringement of the eleven patents-in-suit. (D.I. 2 at ¶¶ 29-230)

---

[3] Because the August 23, 2018 letter is incorporated by reference into the complaint, the court may consider the letter on a Rule 12(b)(6) motion to dismiss. (D.I. 2 at ¶¶ 41, 60, 79, 98, 117, 152, 170, 188, 206, 224); *see Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008) (on a Rule 12 motion, the court must consider allegations in the complaint, taken as true, and any documents referenced in the complaint). Vudu attaches the letter to its opening brief, and Plaintiffs raise no objection to the court's consideration of the letter. (D.I. 13, Ex. 1; D.I. 17 at 2)

**III.    LEGAL STANDARD**

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

Under 35 U.S.C. § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). In addition to showing direct infringement,[4] a plaintiff asserting a cause of action for induced infringement must also show that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2014). Knowledge of the patent, without knowledge of infringement, is not enough to establish liability for induced infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1926 (2015). Accordingly, the Federal Circuit has held that, "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *Bill of Lading*, 681 F.3d at 1339).

### A. Knowledge of the Patents-In-Suit

In support of the motion to dismiss, Vudu argues that the complaint fails to allege knowledge of the patents-in-suit identified at Counts I through V and Count VII.[5]  (D.I. 13 at 6)

---

[4] The parties do not dispute the adequacy of Plaintiffs' allegations of direct infringement.

[5] Vudu does not challenge the sufficiency of the complaint's allegations regarding Vudu's knowledge of the patents asserted in Counts VIII through XI. The complaint alleges knowledge of these patents as of the August 23, 2018 letter, and the letter specifically identifies the '562 patent, the '805 patent, the '558 patent, and the '493 patent. (D.I. 2 at ¶¶ 166, 168-170, 184, 186-188, 202, 204-206, 220, 222-224; D.I. 13, Ex. 1 at 3) Whether the contents of the letter are sufficient to put Vudu on notice of its purported inducement regarding these patents is a separate matter addressed at § IV.B, *infra*.

Specifically, Vudu contends that knowledge of the patents-in-suit cannot properly be tied to the filing of the complaint itself because those allegations are made in the past tense, whereas the filing of the complaint is a future event. (*Id.* at 6-7) According to Vudu, induced infringement allegations cannot properly be based on knowledge obtained only with the filing of the complaint. (*Id.* at 7)

Plaintiffs respond that the complaint's identification of each patent and the allegedly infringing conduct is sufficient to put Vudu on notice of the alleged post-filing inducement, consistent with an extensive line of cases from this District. (D.I. 17 at 12-13) At oral argument, Plaintiffs clarified that the complaint alleges Vudu had knowledge of the patents-in-suit prior to the filing of the complaint based on the August 23, 2018 letter, although Plaintiffs only allege liability for induced infringement on a forward-looking basis. (4/29/2020 Tr. at 22:20-23:8)

The '736 patent, which is the subject of Count I of Plaintiffs' complaint, is identified in the August 23, 2018 letter. (D.I. 2 at ¶¶ 29-47; D.I. 13, Ex. 1 at 3) Although the allegations of Vudu's knowledge of inducement in Count I of the complaint are based on the filing of the complaint itself, the complaint adequately pleads that Vudu was aware of the '736 patent in August 2018 as a result of the letter: "Helios first notified Vudu of Plaintiffs' DASH patent portfolio and Vudu's infringement of the patents in that portfolio via a letter dated August 23, 2018." (*Id.* at ¶ 41) Nonetheless, for the reasons set forth at § IV.B, *infra*, I recommend that the court dismiss Count I for failure to satisfy the requirement that Vudu had knowledge its conduct induced infringement of the '736 patent.

The August 23, 2018 letter also identifies the patent application which led to the issuance of the '373 patent addressed at Count VII of the complaint. (D.I. 13, Ex. 1 at 3 (citing U.S. Patent Application NO. 15/977,218)) However, the '373 patent did not issue until the following

5

year. (D.I. 2 at ¶ 141; Ex. 13) Courts have held that "[a] patent application does not provide notice of the resulting patent for indirect . . . infringement." *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018) (citing *VIA Techs., Inc. v. ASUS Computer Int'l*, 2015 WL 3809382, at *3 (N.D. Cal. June 18, 2018)); *see also Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (concluding that an alleged infringer's "mere alleged awareness of [a] patent application does not imply the requisite knowledge of the existence of the later-issued patent."). The complaint also fails to adequately allege Vudu's knowledge of the patents' existence with respect to Counts II through V of the complaint. The August 23, 2018 letter did not provide notice of the '830, '660, '414, and '145 patents because these patents issued from applications which postdated the August 23, 2018 letter. (D.I. 2, Exs. 3, 5, 7, 9) Consequently, Counts II through V and VII of the complaint do not sufficiently allege that Vudu had knowledge of the patents prior to the filing of the complaint.

 Plaintiffs cite cases within this district holding that "the filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date." *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 459 (D. Del. 2014) (quoting *SoftView LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012)). But these cases are distinguishable because they addressed the sufficiency of amended pleadings. *See ReefEdge*, 29 F. Supp. 3d at 457 (addressing sufficiency of first amended complaint); *SoftView*, 2012 WL 3061027, at *7 (addressing sufficiency of fourth amended complaint). For the reasons discussed in more detail at § IV.B, *infra*, the filing of the original complaint is not sufficient to establish the knowledge requirements for inducement.

### B. Knowledge of Inducement[6]

Vudu alleges that Plaintiffs' causes of action for induced infringement should be dismissed because there was no inducement at the time Plaintiffs filed the complaint, and allegations of post-suit inducement based on knowledge obtained after the filing of the complaint are not sustainable. (D.I. 13 at 7-8) In response, Plaintiffs contend that causes of action for induced infringement based on post-complaint knowledge are widely accepted in this district. (D.I. 17 at 13-14)

Allegations of Vudu's knowledge of inducement derived from the filing of the original complaint itself are not sufficient to state a claim in this case.[7] Plaintiffs' complaint alleges that "Vudu has had actual knowledge" of the patents-in-suit and knew its acts were inducing infringement "since at least the time of receiving this Complaint." (D.I. 2 at ¶ 40; *see also id.* at ¶¶ 59, 78, 97, 116, 131, 151) These allegations follow the same formula of the pleaded allegations before the court in *VLSI Tech. LLC v. Intel Corp.*: "Intel has had knowledge of the

---

[6] Counts I to V and VII allege only post-suit knowledge of induced infringement regarding the asserted patents. (D.I. 2 at ¶¶ 37, 56, 75, 94, 113, 148) Counts VIII to XI allege pre-suit knowledge of induced infringement regarding the applicable patents based on the August 23, 2018 correspondence from Helios. (*Id.* at ¶¶ 166, 168-170, 184, 186-188, 202, 204-206, 220, 222-224) Although Vudu presents arguments challenging the sufficiency of pre-suit allegations of knowledge found at Counts VIII through XI, Plaintiffs respond that they intend to pursue only post-complaint liability for inducement for Counts I to V and VII to XI. (D.I. 13 at 5-6; D.I. 17 at 12 (citing D.I. 2 at ¶¶ 59, 78, 9, 116, 131, 151, 169, 187, 205 and 223)). The complaint does not assert a cause of action for induced infringement at Count VI. (D.I. 2 at ¶¶ 125-139; D.I. 13 at 2)

[7] To the extent that Plaintiffs allege Vudu had knowledge that its acts induced infringement of the patents-in-suit based on the contents of the August 23, 2018 letter, the court notes that this letter did not identify any specific products alleged to infringe, nor did it include any charts identifying the purported infringement. (D.I. 13, Ex. 1 at 1-2); *see also Dynamic Data Techs. v. Google LLC*, C.A. No. 19-1529-CFC-CJB, 2020 WL 1285852, at *2-3 (D. Del. Mar. 18, 2020) (concluding that the complaint lacked plausible allegations that the pre-suit letter informed the defendant of its allegedly infringing activities because the letter "did not allege that Google infringed any of the patents-in-suit, let alone explain why it is that the accused Google products at issue . . . infringed those particular patents.").

7

#552 Patent at least since the filing of this complaint . . . ." C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019). In *VLSI*, the court indicated that "[t]he complaint itself cannot serve as the basis for a defendant's actionable knowledge. The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim." *Id.*[8]

Plaintiffs cite a string of cases suggesting that a cause of action for induced infringement based on post-suit knowledge is sustainable. (D.I. 17 at 13) But these cases are distinguishable because they addressed the sufficiency of amended pleadings which looked back to conduct occurring since the filing of a previous iteration of the complaint. *See, e.g.*, *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 574 (D. Del. 2012) (analyzing the sufficiency of the first amended complaint); *Softview*, 2012 WL 3061027 (analyzing the sufficiency of the fourth amended complaint); *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, C.A. No. 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016) (analyzing the sufficiency of the third amended complaint); *Clouding IP, LLC v. Rackspace Hosting, Inc.*, C.A. No. 12-675-LPS, 2014 WL 495752 (D. Del. Feb. 6, 2014) (analyzing the sufficiency of the second amended complaint); *ReefEdge*, 29 F. Supp. 3d at 457 (analyzing the sufficiency of the first amended complaint). Consistent with this line of cases, the court in *DoDots Licensing Solutions LLC v. Lenovo Holding Co., Inc.* recently found that allegations of induced infringement in a second amended complaint were sufficient based on knowledge provided by the filing first amended complaint:

---

[8] At oral argument, counsel for Plaintiffs argued that these statements in *VLSI* pertained to a cause of action for a willfulness-based enhanced damages claim, as opposed to induced infringement. (4/29/2020 Tr. at 32:4-14) But the quoted portions of the decision are not stated so narrowly as to limit them to a cause of action for a willfulness-based enhanced damages claim. *VLSI*, 2019 WL 1349468, at *2. The court addressed the legal standards for both willfulness and indirect infringement in a single paragraph, establishing that both require a showing of knowledge of the patent and knowledge of infringement. *Id.* at *1. There is no indication that the court intended to apply a different analysis for "knowledge of the patent" and "knowledge of infringement" depending on whether the asserted patent was subject to a cause of action for a willfulness-based claim for enhanced damages or indirect infringement.

> Given that the First Amended Complaint provided Defendants with knowledge of the Patents-in-Suit and also with knowledge of the purported infringement caused by using the accused products in conjunction with certain applications, one plausible inference for Defendants' continued marketing of those products and applications is that Defendants specifically intend to induce their customers to infringe the Patents-in-Suit.

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-098-MN, 2019 WL 3069773, at *3 (D. Del. July 12, 2019). Whereas an original complaint alleging induced infringement based on post-filing knowledge is necessarily forward-looking, an amended pleading looks back to conduct that actually occurred since the filing of a prior version of the complaint. *See E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, C.A. No. 11-773-SLR-CJB, 2012 WL 4511258, at *7 n.6 (D. Del. Sept. 28, 2012) ("In the cases where our Court has addressed prospective indirect infringement claims, it has tended to do so in the context of the filing of an amended complaint-with the date of the defendant's alleged knowledge of the patent-at-issue alleged to have begun on the date when the initial complaint was filed."). As in this case, the court in *VLSI* addressed the sufficiency of an original complaint based on post-filing conduct, leading to the conclusion that "[t]he purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim." *VLSI*, 2019 WL 1349468, at *2.

At oral argument, counsel for Plaintiffs discussed portions of the complaint describing the patents-in-suit as "claim[ing] technologies fundamental to Dynamic Adaptive Streaming over HTTP," which "has been standardized in the ISO/IEC 23009 standards." (D.I. 2 at ¶¶ 22-26) Counsel argued for the first time that Vudu necessarily had knowledge its actions induced infringement because the patents-in-suit are standard-essential patents ("SEPs") based on the allegations in the complaint.[9] (4/29/2020 Tr. at 43:7-15) But, as noted by counsel for Vudu, the

---

[9] Counsel for plaintiffs did not provide any authority in support of the position that knowledge of inducement may be automatically inferred when the patents-in-suit are SEPs.

9

August 23, 2018 letter listed a number of patents beyond those asserted in this litigation, and it did not provide Vudu with any notice that Plaintiffs believed these patents to be SEPs. (D.I. 13, Ex. 1) Because Plaintiffs represented that the patents-in-suit are SEPs for the first time in the complaint, and because the filing of the original complaint is not sufficient to confer knowledge of inducement, the fact that the patents-in-suit are alleged to be SEPs does not alter the analysis.

I recommend that the court dismiss Plaintiffs' causes of action for induced infringement based on alleged post-complaint knowledge that Vudu's acts induced others to infringe. Nonetheless, as acknowledged by Vudu, Plaintiffs may seek leave to file an amended pleading alleging post-suit inducement based on knowledge derived from the filing of the original complaint.[10] (D.I. 13 at 7-8)

### C. Specific Intent to Induce Infringement

Vudu contends that the complaint does not support a plausible claim for induced infringement because it fails to identify specific acts by Vudu that constitute inducement. (D.I. 13 at 4, 8) Vudu argues that the complaint does not identify any factual circumstances that would permit an inference of specific intent beyond the generic actions of selling and supporting a product, and continuing post-notice conduct does not support an inference of intent when no specific acts of inducement were alleged in the complaint. (*Id.* at 8-9)

In response, Plaintiffs contend that Vudu induces its customers to infringe by offering streaming content through its website and app. (4/29/2020 Tr. at 40:14-41:17) According to Plaintiffs, the complaint shows how Vudu actively induces its customers to stream video on demand content using single-click "Watch Free" buttons. (D.I. 17 at 16-17) Plaintiffs argue that

---

[10] Any amended pleading filed in the future should also incorporate allegations drawing a clear connection between the direct infringement by Vudu's customers and Vudu's own efforts to encourage that infringement, as discussed at § IV.C, *infra*.

Vudu's receipt of the complaint and its decision to continue its conduct despite the allegations in the complaint satisfy the requirement for specific intent requirement. (*Id.* at 16) Plaintiffs note that the claim charts attached to the complaint include screenshots and explanations of how the claimed methods are performed by Vudu's customers and show how Vudu "provid[es] and caus[es] to be used streaming media content" to actively aid and abet infringement by others. (*Id.* at 17)

Plaintiffs' failure to sufficiently allege pre-suit knowledge of induced infringement is fatal to its allegations of Vudu's specific intent to induce infringement, which are also based solely on post-suit conduct:

> Vudu's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities. On information and belief, Vudu has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Vudu has had actual knowledge of the '736 patent and that its acts were inducing infringement of the '736 patent since at least the time of receiving this Complaint.

(D.I. 2 at ¶ 40; *see also id.* at ¶¶ 59, 78, 97, 116, 151) A complaint alleging post-suit inducement, which was drafted prior to the filing of the lawsuit, cannot state a viable claim for induced infringement. *See VLSI*, 2019 WL 1349468, at *2 (holding that "the complaint itself cannot serve as the basis for a defendant's actionable knowledge."). In the present case, Vudu did not have the benefit of seeing Plaintiffs' claim charts alleging infringement until the filing of the complaint. Moreover, the August 23, 2018 letter did not provide any details indicating how Vudu took actions which induced the infringement of the patents-in-suit. (D.I. 13, Ex. 1) Plaintiffs' representation that they reviewed Vudu's website provides no clarity regarding the basis for the induced infringement allegations. (*Id.* at 1)

The complaint's allegations of specific intent also fail to identify which specific actions were taken by Vudu to show Vudu's intent to induce its customers to infringe. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004) (stating that the sale of an accused product that may be used in an infringing manner, without active steps taken by the defendant to induce infringement, is not enough). Allegations that Vudu "distribut[ed] the Accused Instrumentalities and provid[ed] materials and/or services related to the Accused Instrumentalities" fall short of suggesting that Vudu encouraged customers to infringe or provided them with instructions on how to use the accused products in an infringing manner. (*See, e.g.*, D.I. 2 at ¶ 40); *cf. Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 395 (D. Del. 2013) (finding sufficient allegations of specific intent where complaint alleged that the defendant provided customers with "detailed explanations, instructions and information as to arrangements, applications and uses of the [a]ccused [i]nstrumentalities that promote and demonstrate how to use the [a]ccused [i]nstrumentalities in a manner that would infringe" the patent-in-suit). The allegations in Plaintiffs' complaint are nearly identical to the pleaded allegations before the court in *Apple Inc. v. Princeps Interface Techs. LLC*: "Apple's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing instructional materials and/or services related to the Accused Instrumentalities." 2020 WL 1478350, at *4 (N.D. Cal. Mar. 26, 2020). There, the court dismissed the causes of action for induced infringement after determining that these allegations were insufficient to allege specific intent. *Id.*

Allegations that Vudu provides streaming media content or causes it to be used in accordance with the MPEG-DASH standard similarly fail to give rise to a reasonable inference that Vudu specifically intended its customers to infringe. (D.I. 2 at ¶¶ 33, 39; 4/29/2020 Tr. at

24:20-25:7) The claim chart attached to the complaint provides additional details on the allegedly infringing product and suggests that Vudu's customers infringe by clicking the "Watch Free" button to stream content provided by Vudu. (D.I. 2, Ex. 2) But allegations that Vudu offers the allegedly infringing streaming services are not sufficient to show that Vudu specifically intends its customers to infringe.[11] (4/29/2020 Tr. at 40:14-41:17)

Plaintiffs rely on the Federal Circuit's decision in *Lifetime Industries, Inc. v. Trim-Lok, Inc.* to suggest that knowledge of the patent and knowledge of infringement are sufficient to give rise to a reasonable inference of specific intent. (D.I. 17 at 8-9, 16); *see Lifetime*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (holding that it was reasonable to infer specific intent from pleaded facts showing knowledge of the patent and knowledge of infringement). But the Federal Circuit in *Lifetime* recognized specific intent as an element of induced infringement separate and apart from knowledge of infringement: "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Id.* at 1379 (quoting *Bill of Lading*, 681 F.3d at 1339). The Federal Circuit concluded that specific intent could be reasonably inferred where the defendant learned of the patent-in-suit and subsequently "assisted in or directed the installation of exactly the same type" of infringing seal, which had no non-infringing uses. *Id.* at 1380. These pleaded allegations suggest that the defendant took active steps to induce infringement by participating in the installation of the seal, drawing a direct connection between the defendant's knowledge and the infringing activity by the defendant's customers. *Id.* In contrast, Plaintiffs' complaint does

---

[11] At oral argument, Plaintiffs argued, "[t]hat's what the Defendant's business is, is offering these services through its website and through its app. That's it. And so there's a specific allegation that offering these services is inducing." (4/29/2020 Tr. at 40:21-41:2)

13

not identify specific actions taken by Vudu to encourage its customers to infringe, instead alleging that Vudu distributes the accused products "with specific intent to cause infringement." (D.I. 2 at ¶ 40)  It is not reasonable to infer that Vudu intended to induce its customers to infringe by offering the allegedly infringing product.

Similar to the pleading presently before the court, the complaint in *E.I. Du Pont de Nemours* based allegations of specific intent on facts showing that the defendants sold the accused product to customers, the customers practiced the claimed method, and the defendants received notice of the asserted patent when the complaint was filed.  *E.I. Du Pont de Nemours*, 2012 WL 4511258, at *7.  The court determined that these facts did not establish the defendants' specific intent at the pleading stage because the complaint failed to plead facts regarding the nature of the relationship between the defendants and their customers, or about how the sale of the defendants' products related to the patented method.  *Id.*

Likewise, Vudu's alleged distribution of the Accused Instrumentalities and its alleged provision of unspecified materials and/or services relating to the Accused Instrumentalities are not enough to give rise to a reasonable inference that Vudu specifically intended to induce its customers to infringe the patents-in-suit.  (D.I. 2 at ¶ 40; *see also id.* at ¶¶ 59, 78, 97, 116, 151); *see Telecomm Innovations*, 966 F. Supp. 2d at 394 ("Plaintiffs' complaint must extend beyond the merely formulaic 'makes, uses, offers to sell, or sells' language provided in 35 U.S.C. § 271 to sufficiently plead induced infringement.").  The claim charts attached to the pleading offer more detail regarding the basis for direct infringement by Vudu's customers, but they do not provide additional factual support establishing a connection between the direct infringement by Vudu's customers and any alleged support for those infringing acts by Vudu.[12]  (*See, e.g.*, D.I. 5,

---

[12] In the answering brief, Plaintiffs allege that the placement of the "watch" and "watch free" buttons constitute induced infringement. (D.I. 17 at 5-6, 11-12, 17)  These allegations are not

Ex. 4); *see See Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 681 (D. Del. 2013) (concluding that "plaintiff has not identified any actions whereby defendants assisted each other or anyone else to infringe" the patent-in-suit, "relying instead on the circular logic that because defendants have directly infringed the [patent], they must be inducing" infringement of that patent.). Consequently, I recommend that the court grant Vudu's motion to dismiss.

### C. Willful Blindness

If the complaint does not adequately plead actual knowledge, a plaintiff may nonetheless satisfy the pleading standard for induced infringement upon a showing of willful blindness. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 769. The Supreme Court has articulated two basic requirements under the doctrine of willful blindness: "(1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769-70. At the pleading stage, the court must draw all reasonable inferences in favor of Plaintiffs.

Vudu alleges that the complaint does not adequately plead knowledge based on willful blindness because there are no facts to suggest Vudu subjectively believed there was a high probability of infringement, nor are there allegations that Vudu took deliberate actions to avoid

---

included in the complaint itself, and the claim charts identify the "watch" and "watch free" buttons in the context of direct infringement by Vudu's customers, without suggesting that Vudu intentionally placed the buttons in such a manner as to induce infringement. (*See, e.g.*, D.I. 2, Ex. 2 at 2) Vudu indicates that, "[i]f Helios wants to allege that Vudu's failure to remove the 'watch' and 'watch free' buttons between the date of opposition and the filing of an amended complaint demonstrates a 'specific intent' to infringe, Vudu will address those allegations if and when they are made." (D.I. 18 at 8)

learning of infringement. (D.I. 13 at 10)  In response, Plaintiffs contend that the complaint describes the parties' pre-suit communications, in which Plaintiffs notified Vudu of the patents-in-suit and Vudu repeatedly avoided substantive licensing discussions. (D.I. 17 at 18)

Plaintiffs' complaint fails to give rise to a reasonable inference of willful blindness. The complaint alleges that "Helios first notified Vudu of Plaintiffs' DASH patent portfolio and Vudu's infringement of the patents in that portfolio via a letter dated August 23, 2018." (D.I. 2 at ¶ 41; *see also id.* at ¶¶ 42-45, 60-64, 79-83, 98-102, 117-121, 152-156, 170-174, 188-192, 206-210, 224-228)  But the August 23, 2018 letter, which was incorporated by reference into the complaint, does not expressly accuse Vudu of infringement and does not identify how the Vudu website or Vudu apps might infringe the patents listed in Plaintiffs' DASH patent portfolio. (D.I. 13, Ex. 1 at 1)  Instead, the August 23, 2018 letter urges Vudu to execute a nondisclosure agreement,[13] after which Plaintiffs will "provide further information as to the reasons Walmart would benefit under a license under the DASH patent portfolio." (*Id.*)  Such a "known risk" that the induced acts may be infringing is not sufficient to equate to knowledge under the doctrine of willful blindness. *See Global-Tech*, 563 U.S. at 770.

Vudu's alleged reluctance to engage in licensing discussions following Plaintiffs' initial correspondence does not satisfy the Supreme Court's requirement of "active efforts by an inducer to avoid knowing about the infringing nature of the activities." *Id.*  The complaint alleges that Plaintiffs made efforts to engage in licensing discussions, "to no avail," from October 2018 to March 2019. (D.I. 2 at ¶ 172)  Nonetheless, the complaint acknowledges that Vudu responded to Plaintiffs' communications in October 2018 and February 2019, and

---

[13] Vudu argues that it should not be subject to a claim for induced infringement under the doctrine of willful blindness based on its failure to enter into an NDA with Plaintiffs, because such a holding would amount to a requirement for defendants to submit to the terms demanded by the patent holder. (D.I. 18 at 10)

16

Plaintiffs replied by providing evidence of the exclusive license conveyed from Ideahub to Helios. (*Id.* at ¶¶ 171, 173)  The complaint does not allege that Plaintiffs identified the bases of their infringement positions in response to Vudu's communications.  These facts do not give rise to a plausible inference that Vudu actively avoided learning of the allegedly infringing conduct.

## V.   CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Vudu's motion to dismiss.  (D.I. 12)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 11, 2020

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE