IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HELIOS STREAMING, LCC and IDEAHUB, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1792 (CFC) (SRF) |
| VUDU, INC., | ) ) ) | |
| Defendant. | ) | |

**VUDU, LLC'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
<u>FOR FAILURE TO STATE A CLAIM</u>**

Morris, Nichols, Arsht &Tunnell LLP
Jack B. Blumenfeld (#1014)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
amoshos@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Steven Lieberman,
Sharon L. Davis
Jennifer B. Maisel
Brian S. Rosenbloom
Nicole DeAbrantes
Rothwell, Figg, Ernst & Manbeck, P.C.
607 14th Street, N.W., Suite 800
Washington, DC  20005
(202) 783-6040

August 5, 2020

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.   SUMMARY OF THE ARGUMENT .............................................................................. 1

III.  STATEMENT OF FACTS ............................................................................................. 4

IV.   ARGUMENT .................................................................................................................. 6

      A.    Legal Standard ................................................................................................... 6

      B.    Plaintiffs Fail to State a Plausible Claim for Induced Infringement ..................... 7

            1.    Plaintiffs fail to allege knowledge of the patents-in-suit ........................... 8

            2.    Plaintiffs fail to allege knowledge of infringement ................................. 10

            3.    Plaintiffs fail to allege direct infringement by a third party ..................... 15

V.    CONCLUSION ............................................................................................................ 16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*AgroFresh Inc. v. Essentiv LLC,*
No. 16-662, 2018 WL 6974947 (D. Del. Dec. 27, 2018) ........................................................ 3, 6, 10

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
365 U.S. 336 (1961) .................................................................................................................. 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................. 4, 6

*Bayer Healthcare, LLC v. Baxalta, Inc.,*
No. 16-1122, slip op. (D. Del. Aug. 10, 2017) ........................................................................ 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................................. 4, 6

*Commil USA, LLC v. Cisco Sys., Inc.,*
135 S. Ct. 1920 (2015) .............................................................................................................. 7

*Connelly v. Lane Constr. Corp.,*
809 F.3d 780 (3d Cir. 2016) ..................................................................................................... 6

*Dynamic Data Techs. v. Google LLC,*
No. 19-1529, 2020 WL 1285852 (D. Del. Mar. 18. 2020) ....................................................... 13, 14

*Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.,*
No. 15-545, 2016 WL 1019667 (D. Del. Mar. 15, 2016) ......................................................... 8, 13

*Execware, LLC v. Staples, Inc.,*
No. 11-836, 2012 WL 6138340 (D. Del. Dec. 10, 2012) ......................................................... 15

*Finjan, Inc. v. Juniper Networks, Inc.,*
No. 17-5659, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ...................................................... 10

*Fujitsu Ltd. v. Netgear Inc.,*
620 F.3d 1321 (Fed. Cir. 2010) ................................................................................................ 13

*Global-Tech Appliances, Inc. v. SED S.A.,*
563 U.S. 754 (2011) .................................................................................................................. 8

*In re Bill of Lading Transmission & Processing Syst. Patent Litig.,*
681 F.3d 1323 (Fed. Cir. 2012) ................................................................................................ 7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*
869 F.3d 1372 (Fed. Cir. 2017) ................................................................................................ 6, 7

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ................................................................................ 7, 15

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. Sept. 20, 2012) ........................................ 9, 10

*Network Managing Sols., LLC v. AT&T Inc.*,
    No. 16-295, 2017 WL 472080 (D. Del. Feb. 3, 2017) .............................. 12

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
    No. 19-1031, 2019 WL 5626647 (D. Del. Oct. 31, 2019) ......................... 8, 9

*Robocast, Inc. v. Microsoft Corp.*,
    21 F. Supp. 3d 320 (D. Del. 2014) ............................................................ 9

*Software Research, Inc. v. Dynatrace LLC*,
    316 F. Supp. 3d 1112 (N.D. Cal. 2018) ..................................................... 8

*Varian Med. Sys., Inc. v. Elekta AB*,
    No. 15-871, 2016 WL 3748772 (D. Del. July 12, 2016) ........................... 15

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ............................................................... 7

**Rules and Statutes**

35 U.S.C. § 271(b) ..................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 6

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiffs, Helios Streaming, LLC and Ideahub, Inc. (collectively "Plaintiffs"), filed this action against Vudu, LLC[1] ("Vudu"), on September 24, 2019, alleging that Vudu directly infringed and induced others to directly infringe eleven patents ("patents-in-suit").  D.I. 2.  On December 20, 2019, Vudu moved to dismiss Plaintiffs' indirect infringement claims under Fed. R. Civ. P. 12(b)(6). D.I. 12.  After oral argument on April 29, 2020, Judge Fallon issued a Report and Recommendation on May 11, 2020, recommending that the Court grant Vudu's motion to dismiss. D.I. 28.  Plaintiffs filed objections to the Report and Recommendation on May 26, 2020 (D.I. 29), and Vudu filed responses on June 9, 2020. D.I. 31.   On June 15, 2020, the Court issued a Memorandum Opinion granting Vudu's motion to dismiss, dismissing all of the indirect infringement claims in the Complaint, and granting Plaintiffs leave to amend. D.I. 32.

On July 15, 2020, Plaintiffs filed a First Amended Complaint. D.I. 45.  Because Plaintiffs' First Amended Complaint does not cure the deficiencies identified in either the Court's Report and Recommendation or Memorandum Opinion, Vudu once again moves to dismiss Plaintiffs' indirect infringement claims under Fed. R. Civ. P. 12(b)(6).

## II.     SUMMARY OF THE ARGUMENT

In its Order granting Vudu's motion to dismiss, this Court held that the Complaint failed to recite facts from which it could plausibly be inferred that Vudu induced infringement of the patents-in-suit.  D.I. 32 at 2.  Specifically, the Complaint failed to adequately plead:  (1) that Vudu knew of the patents-in-suit; and (2) that Vudu knew its acts induced infringement of the patents-in-suit.  The First Amended Complaint suffers the same deficiencies and should be dismissed for three independently sufficient reasons.

---

[1] On June 30, 2020, Vudu, Inc. changed its name to Vudu, LLC.

*First*, the First Amended Complaint still fails to adequately allege that Vudu had pre-suit knowledge of any of the patents-in-suit.  The August 23, 2018 letter ("Notice Letter") identified only five of the patents-in-suit (U.S. Patent Nos. 10,027,736, 8,645,562, 8,909,805, 9,325,558 and 9,467,493)—not even referring to the other six patents-in-suit.  And for the five identified patents-in-suit, the Notice Letter did so only by including them in a laundry list of seventy-five U.S. and foreign patents and applications—without distinctly pointing out and asserting the five specific patents-in-suit.  As to the six remaining patents-in-suit, Plaintiffs did not even do that much.  The Notice Letter did not identify U.S. Patent Nos. 10,362,130 ("the '130 patent") and 10,375,373 ("the '373 patent") by patent number at all, but instead only identified their originally-filed applications.  Finally, as to U.S. Patent Nos. 10,270,830 ("the '830 patent"), 10,277,660 ("the '660 patent"), 10,313,414 ("the '414 patent") and 10,356,145 ("the '145 patent"), the Notice Letter did even less, as it disclosed only non-asserted parent applications that later issued as continuations based on applications that postdated the August 23, 2018 Notice Letter.  As Judge Fallon explained in her Report and Recommendation, and is discussed in more detail herein, none of these disclosures in the Notice Letter meet the standard for providing notice of a patent for purposes of supporting a claim for inducing infringement.  Despite the clear insufficiency of the Notice Letter to establish knowledge of the patents-in-suit, Plaintiffs still included these patents in the First Amended Complaint.  As explained herein, for the same reasons that this Court properly dismissed Plaintiffs' inducement claims from the original Complaint, those claims should be dismissed from the First Amended Complaint.

*Second*, even if the First Amended Complaint contained sufficient facts to show knowledge of the patents-in-suit (which it does not), it fails to demonstrate knowledge of infringement sufficient to support Plaintiffs' indirect infringement claims.  This Court had already held that the

Notice Letter "[did] not state that Defendant's products or actions infringe any patent" and "did not explain how Defendant's products or actions infringed the patents", "therefore [it] did not provide adequate notice that Defendant's products or actions constituted or caused infringement of the patents."  D.I. 32 at 2-3.  These deficiencies have not changed from Plaintiffs' original Complaint to their First Amended Complaint.  As explained herein, Plaintiffs add new allegations that purport to rely on the Notice Letter's identification of ISO/IEC 23009-1 as the relevant MPEG-DASH standard for the asserted patents and as the standard used by Vudu to prove knowledge of infringement.  However, as this Court emphasized: "[t]he key fact is that the letter does not offer any explanation about how Defendant's products or actions infringe or caused the infringement of an asserted patent."  D.I. 32 at 3.  Because none of the newly-added allegations point to anything in the Notice Letter (or any of the other pre-suit communications) that supplies that missing explanation, the First Amended Complaint suffers from the same fatal flaws as the original Complaint.

*Third*, the First Amended Complaint should be dismissed for failing to adequately allege an underlying act of direct infringement by third parties.  Inducement requires "an act of direct infringement by a third-party customer." *AgroFresh Inc. v. Essentiv LLC*, No. 16-662, 2018 WL 6974947, at *5 (D. Del. Dec. 27, 2018), *adopted by*, 2019 WL 350620 (D. Del. Jan. 29, 2019).  Plaintiffs allege that Vudu encourages others to infringe by "instructing users…to stream Vudu's DASH-enabled VOD" and by offering "icons, instructions, or statements that actively encourage their partners' or customers' infringing use of the Accused Instrumentalities."  D.I. 45-1, ¶¶80, 82, 138, 140, 196, 198, 254, 256, 311, 313, 418, 420, 476, 478, 534, 536, 592, 594, 650, 652.  However, nowhere in the First Amended Complaint do Plaintiffs allege that Vudu's customers actually

streamed Vudu's DASH-enabled VOD or used Vudu's service in an infringing manner.  Thus, Plaintiffs fail to sufficiently plead that Vudu's customers directly infringed the patents-in-suit.

Because Plaintiffs' implausible indirect infringement theory is entirely devoid of the specific allegations required to meet the well-established plausibility requirements of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), Vudu respectfully requests that this Court once again dismiss Plaintiffs' indirect infringement claims.

## III.    STATEMENT OF FACTS

The First Amended Complaint asserts that Ideahub, Inc. owns the patents-in-suit, and that Helios Streaming, LLC is the exclusive licensee. D.I. 45-1, ¶¶ 27-28.  The patents-in-suit purportedly cover technologies for providing services related to Dynamic Adaptive Streaming over HTTP ("DASH") including the MPEG-DASH standards.  *Id*.  ¶¶ 22-24.  MPEG-DASH is a standard that facilitates high-quality streaming of media content over the internet delivered from conventional HTTP web servers.  *Id*.  ¶¶ 25-26.

Plaintiffs allege that Vudu induces its customers to infringe the patents-in-suit by "selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard."  *Id*.  ¶¶ 34, 93, 151, 209, 267, 373, 431, 489, 547, 605.  Plaintiffs allege that Vudu "knowingly and strategically place[s] one-click 'Watch' or 'Watch Free' buttons with its DASH-enabled VOD content to encourage its customers to stream Vudu's DASH-enabled VOD content" and "instruct[s] users…to stream Vudu's DASH-enabled VOD."  *Id*.  ¶¶ 81-82, 139-140, 197-198, 255-256, 312-313, 419-420, 477-478, 535-536, 593-594, 651-652.

Plaintiffs allege that Vudu has had notice of the patents-in-suit and its alleged infringement since August 23, 2018 when Helios sent the Notice Letter[2] to Vudu. Plaintiffs allege that the Notice Letter identified all of the patents-in-suit. *Id.* ¶¶ 45, 104, 162, 220, 277, 335, 384, 441, 499, 557, 615. However, the Notice Letter actually identified only five of the patents-in-suit. And for those patents, it identified them only as part of a list of over seventy-five patents and applications. As for the six other patents-in-suit, Plaintiffs rely only on references in the Notice Letter to the originally filed applications (for the '130 and '373 patents) or by their non-asserted parent applications (for the '830, '660, '414 and '145 patents). D.I. 45-1, ¶¶ 104, 162, 220, 277, 335, 384.

Plaintiffs allege that the Notice Letter identifies Helios as "the worldwide exclusive licensee of patents and patent applications relating to [MPEG-DASH] that were researched and developed by [ETRI]," and identifies "ISO/IEC 23009-1 as the relevant MPEG-DASH standard" and "as the MPEG-DASH standard utilized by Vudu in its streaming VOD offerings." *Id.* ¶¶ 41-42, 100-101, 158-159, 216-217, 273-274, 331-332, 380-381, 437-438, 495-496, 553-554, 611-612. According to the First Amended Complaint, the Notice Letter contained a "listing of the patents and patent applications comprising Helios's MPEG-DASH portfolio" and informed Vudu that it would "benefit from a license under the DASH patent portfolio." *Id.* ¶¶ 43, 45, 102, 104, 160, 162, 218, 220, 275, 277, 333, 335, 382, 384, 439, 441, 497, 499, 555, 557, 613, 615. Plaintiffs allege that Helios sought to engage in licensing discussions with Vudu between October 2018 and February 2019, but that Vudu stated that "Vudu is not interested in receiving any confidential information, and anything you choose to send would be considered nonconfidential." *Id.* ¶¶ 70,

---

[2]   Vudu attaches the Notice Letter as Exhibit 1 so the court may consider it directly and confirm that the Notice Letter only provides a laundry list of patents (which does not include the majority of the patents-in-suit) and lacks any identification of any specific infringement by Vudu.

127, 185, 243, 300, 358, 407, 466, 524, 582, 640.   However, Vudu also stated that Helios'
identified patents "appear to be assigned to entities other than Helios" and that "it is not clear to
us that Helios Streaming has any standing to engage in these discussions."  *Id.*  ¶¶ 70, 466, 524,
582, 640.

Although the First Amended Complaint theorizes the motives behind Vudu's refusal to
sign a non-disclosure agreement with Helios and alleges information about how Helios was going
to provide claim charts to Vudu regarding Vudu's alleged infringement, Helios only offered
"detailed claim charts *evidencing that the patents in our portfolios are essential to the
DASH…standards*"—not claim charts evidencing infringement.  *Id.*  ¶¶ 66, 124, 182, 240, 297,
355, 404, 462, 520, 578, 636 (emphasis added).

## IV.   ARGUMENT

### A.   Legal Standard

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a complaint for failure to state
a claim upon which relief may be granted.   To survive a motion to dismiss, Plaintiffs' First
Amended Complaint must plead "enough factual matter" that, when taken as true, "state[s] a claim
to relief that is plausible on its face."  *Twombly,* 550 U.S. at 556, 570; *Lifetime Indus., Inc. v. Trim-
Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) ("the *Iqbal/Twombly* standard unquestionably
applies to [] allegations of induced and contributory infringement.").   "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although
the plausibility standard "does not impose a probability requirement, it does require a pleading to
show more than a sheer possibility that a defendant has acted unlawfully."  *AgroFresh Inc.*, 2018
WL 6974947, at *2 (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016)).

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  Liability for induced infringement may arise "if, but only if, [there is]...direct infringement."  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961)).  To prove induced infringement, Plaintiffs must show not only direct infringement but also that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  As this Court made previously clear, "[k]nowledge of the patent, without knowledge of infringement, is not enough to establish liability for induced infringement."  *See* D.I. 28 at 4; *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (Liability for inducing infringement "attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement.").  Accordingly, "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"  *Lifetime Indus., Inc.*, 869 F.3d at 1379 (quoting *In re Bill of Lading Transmission & Processing Syst. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

## B.  Plaintiffs Fail to State a Plausible Claim for Induced Infringement

The First Amended Complaint lacks sufficient facts necessary to plead a plausible claim for induced infringement.  Plaintiffs failed to adequately allege that Vudu knew of the patents-in-suit, knew that its acts encouraged direct infringement or that Vudu's customers actually infringed the patents.  The absence of any one of these required elements – knowledge of the patents, known encouragement, and third-party direct infringement –requires dismissal.  The First Amended Complaint omits all three.

**1.      Plaintiffs fail to allege knowledge of the patents-in-suit**

This Court previously dismissed Plaintiffs' indirect infringement claims because the original Complaint lacked sufficient facts demonstrating that Vudu had knowledge of the patents-in-suit. The First Amended Complaint does not – because it cannot – cure the deficiencies identified by this Court and, therefore, suffers from the same fatal flaws.

The Notice Letter referenced only five of the patents-in-suit, and for those it did so only in a lengthy list of seventy-five U.S. and foreign patents and applications.  Such a disclosure is, as this court has held, legally insufficient.  "[A] patent included in an appendix containing dozens of patents does not place a defendant on notice of the patents-in-suit*." See Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 15-545, 2016 WL 1019667, at *3-4 (D. Del. Mar. 15, 2016) (finding no pre-suit knowledge where the notice letter "does not specifically identify the patents-in-suit in this action from the list of eighty-five patents and patent applications").

For the remaining six patents, the First Amended Complaint is even more deficient.  For example, Plaintiffs again allege that Vudu knew of the '130 and '373 patents as of at least August 23, 2018 because the Notice Letter identified their originally-filed applications.  But this Court has previously rejected this argument, finding that "[a] patent application does not provide notice of the resulting patent for indirect…infringement".  *See* D.I. 28 at 6 (quoting *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018)).

Nothing in the First Amended Complaint changes the facts that supported this Court's earlier decision.  A claim for induced infringement requires "knowledge of the existence of *the patent* that is [allegedly] infringed." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. 19-1031, 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019) (quoting *Global-Tech Appliances, Inc. v. SED S.A.*, 563 U.S. 754, 765-66 (2011))(emphasis added).  As the court has held:

> A "patent pending" notice gives one no knowledge whatsoever. It is not even a
> guarantee that an application has been filed. Filing an application is no guarantee
> any patent will issue and a very substantial percentage of applications never result
> in patents. What the scope of claims in patents that do issue will be is something
> totally unforeseeable.

*Id*. at *3 (quoting *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334 (D. Del. 2014)).

Thus, Vudu could not have known about the '130 and '373 patents at least until they issued on

July 23, 2019, and August 6, 2019, respectively, <u>nearly a year after the date of the Notice Letter</u>.

However, Plaintiffs do not allege that Helios informed Vudu when the patents issued or that Vudu

was somehow obligated to monitor the progression of the originally-filed applications. *See*

*MONEC Holding AG v. Motorola Mobility, Inc*., 897 F. Supp. 2d 225, 232-33 (D. Del. Sept. 20,

2012) ("MONEC cites no authority for imposing a duty on Defendants to indefinitely track a

particular patent in anticipation of a potential infringement lawsuit."). Thus, the First Amended

Complaint fails to raise a plausible inference that Vudu knew of the '130 and '373 patents.

Plaintiffs' allegations of Vudu's pre-suit knowledge of the '830, '660, '414 and '145

patents fare no better. This Court previously held that the Notice Letter did not provide notice of

these patents because these patents issued from applications that post-dated the Notice Letter. D.I.

28 at 6. Because the facts do not suggest that Vudu even knew of the original applications of the

'830, '660, '414 and '145 patents—let alone the actual issued patents—Plaintiffs instead attempt

to establish knowledge through an attenuated connection between the Notice Letter's disclosure

of non-asserted parent applications and the patents-in-suit. *See, e.g.,* D.I. 45-1, ¶ 220 ("Helios

attached to the Notice Letter a listing of the patents and patent applications comprising…a table

titled "U.S. DASH Pending Patent Applications," which explicitly identified U.S. Patent

Application No. 15/834,702 that issued through continuations as the '414 patent."); *Id*. ¶¶ 104,

162, 277. As the court has held, such a connection is not a legally sufficient basis on which to

reasonably infer notice.  *See Bayer Healthcare, LLC v. Baxalta, Inc.*, No. 16-1122, slip op. at 2 (D. Del. Aug. 10, 2017) ("Alleging knowledge of a parent application, [] strains the bounds of plausibility.  Filing an application is no guarantee any patent will issue ... [and] the scope of claims in patents that do issue ... is something totally unforeseeable.") (citation omitted). It is well settled that where, as here, Plaintiffs make "a vague reference to knowledge of Plaintiff's 'patent portfolio' as it relates to the parent application" such an allegation "even if true, does not add anything to the allegation of knowledge of the [] patent."  *Id.*; *see also MONEC Holding AG*, 897 F. Supp. 2d at 232-33 (finding no pre-suit knowledge of reexamined patent because "MONEC cites no authority indicating that actual knowledge of an original patent is equivalent to actual knowledge of a reexamined patent"); *Finjan, Inc. v. Juniper Networks, Inc.*, No. 17-5659, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018) ("That [plaintiff] must resort to such a remote connection in a *non-asserted paten*t to identify a specific reference to just one of the *patents-in-suit* aptly demonstrates the frailty of [plaintiff]'s allegations (or lack thereof) regarding [defendant]'s pre-suit knowledge.") (emphasis in original).  The Notice Letter's disclosure of non-asserted parent applications therefore falls well short of establishing plausibility and instead suggests nothing more than the "sheer possibility" that Vudu knew of the '830, '660, '414 and '145 patents.  *See AgroFresh Inc.*, 2018 WL 6974947, at *2.

For the foregoing reasons, Plaintiffs failed to plead knowledge of the patents-in-suit and therefore their indirect infringement claims should be dismissed.

### 2.    **Plaintiffs fail to allege knowledge of infringement**

Even if Plaintiffs could demonstrate knowledge of the patents-in-suit – which, as shown above, they cannot – the indirect infringement allegations in the First Amended Complaint still fail. As this Court has made clear, "[k]nowledge of the patent, without knowledge of infringement, is not enough to establish liability for induced infringement."  D.I. 28 at 4.  Thus, the First

10

Amended Complaint must also contain plausible facts that would allow this Court to reasonably

infer that Vudu knew its acts induced infringement.  Because it does not, the induced infringement

claims in the First Amended Complaint should be dismissed for this reason as well.

In its June 15, 2020 Order, this Court held that the Notice Letter "[did] not state that

Defendant's products or actions infringe any patent" and "did not explain how Defendant's

products or actions infringes the patents", "therefore [it] did not provide adequate notice that

Defendant's products or actions constituted or caused infringement of the patents."  D.I. 32 at 2-

3.  In the Report and Recommendation, Judge Fallon also noted that the Notice Letter: (i) "listed

a number of patents beyond those asserted in this litigation"; (ii) "did not provide Vudu with any

notice that Plaintiffs believed these patents to be [standard-essential patents]"; (iii) "did not

identify any specific products alleged to infringe"; and (iv) "did [not] include any charts

identifying the purported infringement."  D.I. 28 at 7 n.7, 9-10.  These deficiencies have not

changed from Plaintiffs' original Complaint to its First Amended Complaint.

Plaintiffs have attempted to overcome these deficiencies by adding the following

allegations in the First Amended Complaint:

> 41. The Notice Letter identified Helios as "the worldwide exclusive licensee of
> patents and patent applications relating to [MPEG-DASH] that were researched and
> developed by [ETRI]," and noted that "ETRI was a key contributor to the
> development of [MPEG-DASH], which later led to its adoption as the first
> international standard for adaptive streaming technology."
>
> 42. The Notice Letter specifically identified ISO/IEC 23009-1 as the relevant
> MPEG-DASH standard for the Asserted Patents, including the '736 patent, and as
> the MPEG-DASH standard utilized by Vudu in its streaming VOD offerings.
>
> 43. The Notice Letter identified Vudu's website, "https://www.vudu.com/," and
> "apps on various types of electronic devices" as reasons Vudu "would benefit from
> a license under the DASH patent portfolio." Because Vudu's primary offering to
> consumers is a streaming service, and because its web site and apps are the
> platforms on which the streaming service is offered, it is reasonable to infer that

Vudu understood that the act of offering such services not only necessitated Vudu's own infringement, but also infringement by its customers.

44. Based on the facts set forth above, it is reasonable to infer that Vudu knew the reason Helios suggested Vudu "would benefit from a license under the DASH patent portfolio" is that Vudu's website and apps provided DASH-enabled streaming VOD, and Helios was alleging its DASH patents were essential to Vudu's use of this technology.

*See* D.I. 45-1, ¶¶ 41-44, 100-103, 158-161, 216-219, 273-276, 331-334, 380-383, 437-440, 495-498, 553-556, 611-614.

These new allegations in First Amended Complaint still fail to fix the problem of lack of notice.  As this Court explained: "[t]he key fact is that the letter does not offer any explanation about how Defendant's products or actions infringe or caused the infringement of an asserted patent."  D.I. 32 at 3.  Plaintiffs purported reliance on the Notice Letter's identification of ISO/IEC 23009-1 as the relevant MPEG-DASH standard for the asserted patents and as the standard used by Vudu, does nothing to rectify the problem identified by this Court.  *See Network Managing Sols., LLC v. AT&T Inc.*, No. 16-295, 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017) ("Plaintiff knows its own patents.  The standards are public.  Saying on 'information and belief' that the standards 'incorporate the fundamental technologies' covered by the patents, without more, is insufficient to plausibly allege that to practice the standard necessarily means that a defendant also practices the patent.").

Helios never alleged in its pre-suit communications that implementing the MPEG-DASH standard would necessarily infringe any claim of the asserted patents.  Rather, Helios only alleges this <u>for the first time</u> in the First Amended Complaint by making the conclusory statement that "Vudu knew that if a patent was standard-essential to MPEG-DASDH, that patent was necessarily being infringed by streaming VOD utilizing MPEG-DASH."  D.I. 45-1, ¶¶ 85, 143, 201, 259, 316, 423, 481, 539, 597, 655.  There are two fatal flaws in this argument.  *First*, the patents themselves

acknowledge that there are numerous ways to implement the MPEG-DASH standard through the use of "optional" features, and Helios never identified which, if any, implementations would be infringing. *See, e.g.*, D.I. 2-15 at 8:17-30 (describing "optional," "mandatory," "optional with default value," and "conditionally mandatory" features). In situations where "an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement" or "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section", the Federal Circuit has held that "it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010). As such, Plaintiffs cannot rely on these assertions as a substitute for actual notice of infringement. *Second*, the Notice Letter did not assert that practicing the MPEG-DASH standard would necessarily result in infringement.

The court addressed an analogous set of facts in *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, 2016 WL 1019667 (D. Del. Mar. 15, 2016). Like Plaintiffs, the patentee argued that the defendant knew of its infringement when it received patentee's pre-suit letter and list of asserted patents which stated that "the use of one or more patent claims in the portfolio is required to practice or otherwise comply with LTE standards or technical specifications" and offered to license the patents to the defendant. *Id.* at *3. The court disagreed, holding that the letter "did not identify any accused device or specifically allege infringement of the patents-in-suit by [the defendant], its customers, or any other third party." *Id.* at *6.

Likewise, in *Dynamic Data Techs. v. Google LLC*, No. 19-1529, 2020 WL 1285852, at *2 (D. Del. Mar. 18. 2020), *adopted by*, 2020 WL 310786 (D. Del. June 11, 2020), the court found a pre-suit letter insufficient to establish knowledge of infringement where the letter "did not allege

13

that Google infringed any of the patents-in-suit, let alone explain why it is that the accused Google products at issue…infringed those particular patents."   The court further recommended that Google's motion to dismiss be granted because the complaint "does not articulate why, in the absence of having received a pre-suit notice letter explaining why the accused products infringed the patents-in-suit, Google would have nevertheless understood (prior to being served with the Complaint) that such infringement had been occurring."  *Id*.

Here, the First Amended Complaint is completely devoid of any factual allegations suggesting that Helios expressly informed Vudu of its alleged infringement prior to the original Complaint.  In neither the Notice Letter nor any of the other pre-suit communications did Helios specifically identify Vudu's allegedly infringing products or provide claims charts demonstrating infringement.  The First Amended Complaint alleges that Helios *offered* to provide Vudu with claim charts once an NDA was signed.  D.I. 45-1, ¶¶ 66, 124, 182, 240, 297, 355, 404, 462, 520, 578, 636.  However, Helios even then offered only "detailed claim charts *evidencing that the patents in our portfolios are essential to the DASH…standards*"—not claim charts evidencing infringement.  *Id*. (emphasis added).  And as explained above, merely claiming that the asserted patents practice the relevant standard does not suffice.

Therefore, because the Notice Letter and all other pre-suit communications, specifically lack: (i) any list of the specific patents-in-suit; (ii) any assertion that practicing the MPEG-DASH standard would necessarily infringe patents; or (iii) any assertion that Vudu infringes the asserted patents, it cannot be reasonably inferred that Vudu knew its acts constituted inducing infringement based on its pre-suit communications with Helios.

For the foregoing reasons, Plaintiffs failed to adequately plead knowledge of infringement and therefore Vudu respectfully requests that the indirect infringement claims be dismissed.

### 3. Plaintiffs fail to allege direct infringement by a third party

Because the First Amended Complaint lacks plausible facts demonstrating that Vudu's customers directly infringed the patents-in-suit, Plaintiffs' indirect inducement claims should be dismissed for this additional reason.

To prove inducement, Plaintiffs must allege an underlying act of direct infringement. *See Limelight Networks, Inc.*., 572 U.S. at 921 (Liability for induced infringement may arise "if, but only if, [there is] ... direct infringement."). Failure to do so warrants dismissal of the complaint. For example, in *Execware, LLC v. Staples, Inc.,* No. 11-836, 2012 WL 6138340, at *3 (D. Del. Dec. 10, 2012), this court dismissed the patentee's inducement claims because although the amended complaint alleged that the defendant induced its customers to infringe by "offering to its customers use of its software, with the intent that its software be used by [defendant's] customers to infringe the []patent", "[n]owhere in the amended complaint [did] [patentee] allege that [defendant's] customers actually used the accused software, or that [defendant] caused its customers to directly infringe the [] patent" (internal quotations omitted).

Similarly, here, Plaintiffs fail to adequately allege that "any third party actually used" Vudu's accused product to directly infringe any of the patents-in-suit. *See Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871, 2016 WL 3748772, at *3 (D. Del. July 12, 2016) (dismissing complaint where patentee "alleges only that the [Defendants] generally advertise, market, and demonstrate the Gamma Knife Icon to customers[,]" as opposed to, for example, alleging that "any customer has, in fact, used the Gamma Knife Icon"). Plaintiffs allege that Vudu encourages others to infringe by "instructing users…to stream Vudu's DASH-enabled VOD" and by offering "icons, instructions, or statements that actively encourage their partners' or customers' infringing use of the Accused Instrumentalities." D.I. 45-1, ¶¶ 80, 82, 138, 140, 196, 198, 254, 256, 311, 313, 418, 420, 476, 478, 534, 536, 592, 594, 650, 652. Plaintiffs further allege that Vudu places "one-click

'Watch' or 'Watch Free' buttons with its DASH-enabled VOD content to encourage its customers to stream Vudu's DASH-enabled VOD content" and the claims of the patents-in-suit "are necessarily performed by the customer's terminal upon the customer's clicking the 'Watch' or 'Watch Free' buttons." *Id.* ¶¶ 81, 139, 197, 255, 312, 419, 477, 535, 593, 651. None of these allegations, even when taken together, demonstrate that any customer actually infringed the patents-in-suit, *i.e.* that the customers actually clicked on these buttons or streamed the VOD in a way that infringes any of the asserted patents-in-suit. Plaintiffs' allegations ignore the fact that providing the "Watch" or "Watch Free" buttons does not instruct the user whether to stream video using MPEG-DASH or to stream without using DASH. Moreover, Plaintiffs' allegations are internally inconsistent. Plaintiffs allege that only some of its asserted claims are subject to a FRAND obligation as standard essential patents, *see id.* at ¶ 659, but rely on the idea that simply asserting that content is "DASH-enabled" is sufficient to allege infringement. Under these circumstances, Plaintiffs have not adequately alleged direct infringement by customers.

Because the First Amended Complaint fails to allege that even Vudu's customers directly infringed the patents-in-suit, Plaintiffs' indirect infringement claims should be dismissed.

## V.   CONCLUSION

Vudu respectfully requests that the Court grant Vudu's motion to dismiss, and dismiss all of Plaintiffs' induced infringement allegations in the First Amended Complaint.

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
amoshos@mnat.com

OF COUNSEL:

Steven Lieberman,
Sharon L. Davis
Jennifer B. Maisel
Brian S. Rosenbloom
Nicole DeAbrantes
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W., Suite 800
Washington, DC  20005
(202) 783-6040

*Attorneys for Defendant*

August 5, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2020, I caused the foregoing to be electronically filed

with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on August 5,

2020, upon the following in the manner indicated:

Timothy Devlin, Esquire                                         *VIA ELECTRONIC MAIL*
Leonard Monfredo, Esquire
Veronica M. Schad, Esquire
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE  19806
*Attorneys for Plaintiffs*


*/s/ Jack B. Blumenfeld*
————————————————————
Jack B. Blumenfeld (#1014)