IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HELIOS STREAMING, LLC, and IDEAHUB, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-1792-CFC-SRF |
| VUDU, INC., | ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

I. **INTRODUCTION**

Presently before the court in this patent infringement action is defendant Vudu, Inc.'s[1] ("Vudu") partial[2] motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  (D.I. 53)  For the following reasons, I recommend that the court GRANT-IN-PART and DENY-IN-PART Vudu's partial motion to dismiss.

II. **BACKGROUND**

a. **Procedural History**

On September 24, 2019, plaintiff Helios Streaming, LLC ("Helios") and plaintiff Ideahub, Inc. ("Ideahub," and together with Helios, "Plaintiffs") initiated this action by filing a complaint ("the original complaint") against Vudu alleging infringement of various patents. (D.I. 2)  On December 20, 2019, Vudu filed a motion to dismiss the induced infringement claims

---

[1] Vudu, Inc. avers that it changed its name to "Vudu, LLC" on June 30, 2020. (D.I. 54 at 1 n.1)
[2] The present partial motion to dismiss concerns only the induced infringement claims in the first amended complaint ("the FAC"). (D.I. 53; D.I. 54).
[3] The briefing for the pending motion is as follows: defendant's opening brief (D.I. 54), plaintiffs' answering brief (D.I. 58), and defendant's reply brief (D.I. 59).

of the original complaint. (D.I. 12) On June 15, 2020, the court granted Vudu's motion, dismissed all indirect infringement claims in the original complaint, and granted Plaintiffs' request for leave to amend. *Helios Streaming, LLC v. Vudu, Inc.*, C.A. No. 19-1792-CFC-SRF, 2020 WL 2332045 (D. Del. May 11, 2020), *report and recommendation adopted*, 2020 WL 3167641 (D. Del. June 15, 2020). On July 15, 2020, Plaintiffs filed the first amended complaint ("the FAC"), which, *inter alia*, realleges induced infringement claims of the patents-in-suit.[4] (D.I. 45 at ¶¶ 79, 137, 195, 253, 310, 417, 475, 533, 591, 649).

### b. Facts[5]

On August 23, 2018, Helios sent Vudu a notice letter (the "Notice Letter"),[6] which identified Helios as "the worldwide exclusive licensee of patents and patent applications relating to [MPEG-DASH] that were researched and developed by [ETRI],"[7] and noted that "ETRI was a

---

[4] The following are the "patents-in-suit": United States Patent Numbers 10,027,736 ("the '736 patent"), 10,270,830 ("the '830 patent"), 10,277,660 ("the '660 patent "), 10,313,414 ("the '414 patent"), 10,356,145 ("the '145 patent"), 10,362,130 ("the '130 patent"), 10,375,373 ("the '373 patent"), 8,645,562 ("the '562 patent"), 8,909,805 ("the '805 patent"), 9,325,558 ("the '558 patent), and 9,467,493 ("the '493 patent") (collectively, the "patents-in-suit"). (D.I. 45 at ¶¶ 9–20).

[5] The facts in this section are based upon allegations in the FAC, which the court accepts as true for the purposes of the pending motion to dismiss. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). In its earlier Report and Recommendation, the court detailed the relevant background facts of this case, which have not substantially changed, and which are hereby incorporated. *Helios Streaming, LLC v. Vudu, Inc.*, C.A. No. 19-1792-CFC-SRF, 2020 WL 2332045, at *1 (D. Del. May 11, 2020), *report and recommendation adopted*, 2020 WL 3167641 (D. Del. June 15, 2020).

[6] The Notice Letter is incorporated by reference into the FAC. (*See, e.g.*, D.I. 45 at ¶¶ 39–43) Therefore, the court may consider the Notice Letter in making this Report and Recommendation. *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008) (on a Rule 12 motion, the court must consider allegations in the complaint, taken as true, and any documents referenced in the complaint). The Notice Letter is attached to Vudu's opening brief. (D.I. 54, Ex. 1)

[7] Researchers at the Electronics and Telecommunications Research Institute ("ETRI") were most of the inventors of the patents-in-suit. (D.I. 45 at ¶ 21) ETRI is the national leader in Korea in research and development of information technologies. (*Id.*) Ideahub acquired the patents-in-

key contributor to the development of [MPEG-DASH], which later led to its adoption as the first international standard for adaptive streaming technology." (*Id.* at ¶¶ 38, 41, 100) (alterations in original) "The Notice Letter specifically identified ISO/IEC 23009-1 as the relevant MPEG-DASH standard" for the patents-in-suit "and as the MPEG-DASH standard utilized by Vudu in its streaming VOD[8] offerings." (*Id.* at ¶ 42)  The complaint alleges it is reasonable to infer that Vudu has had intimate knowledge of the MPEG-DASH standard since more than two years before receiving the Notice Letter, because that is when Vudu began offering streaming VOD using MPEG-DASH.  (*Id.* at ¶¶ 40, 99, 157, 215, 272, 330, 379, 436, 494, 552, 610)

From September 2018 through March 2019, Helios repeatedly contacted Vudu via email, requesting confirmation of Vudu's receipt of the Notice Letter, inquiring about Vudu's internal investigation regarding a potential licensing deal, and requesting that Vudu execute a non-disclosure agreement ("NDA") so that the parties could advance licensing negotiations.  (*See, e.g.*, *id.* at ¶¶ 51–77)  On October 12, 2018, Vudu confirmed receipt of the Notice Letter via email, stating that "Vudu w[ould] investigate the matter and respond in due course."  (*Id.* at ¶ 55)  On February 19, 2019, Helios emailed Vudu to ask about the results of Vudu's investigation and identified ISO/IEC 23009-1 as the MPEG-DASH standard to which Helios' patent portfolio pertained, attached screenshots that demonstrated Vudu's use of the MPED-DASH standard in its streaming VOD, and repeated its offer to provide detailed claim charts "evidencing that the patents in our portfolios are essential to the DASH . . . standards."  (*Id.* at ¶¶ 65–66) (omissions in original)  On February 27, 2019, Vudu confirmed that it had investigated the patents identified in the Notice Letter, "alleged that Helios's identified patents 'appear to be assigned to entities

---

suit between June and August of 2018.  (*Id.* at ¶ 27)  Around August 2018, Helios obtained an exclusive license to the patents-in-suit.  (*Id.* at ¶ 28)
[8] VOD is an acronym for "video on demand."  (D.I. 45 at ¶ 34)

3

other than Helios,'" and stated that "Vudu is not interested in receiving any confidential information." (*Id.* at ¶ 70) On February 28, 2019, Helios responded by confirming that "Helios Streaming was granted an exclusive license . . . with rights to sublicense the DASH patents," attached screenshots that showed that all 12 MPEG-DASH patents identified in the Notice Letter were exclusively licensed to Helios, and offered to provide claim charts and licensing terms under an NDA. (*Id.* at ¶¶ 71–73) On March 6, 2019, Helios emailed Vudu again requesting a response to its earlier communication and an agreement by Vudu to enter into an NDA by March 15, 2019. (*Id.* ¶¶ 76–77) Vudu never responded. (*Id.* at ¶ 77)

## III. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64.

## IV. ANALYSIS

For an induced infringement cause of action to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege that "at least one direct infringer exists, that defendants had knowledge of the patent(s), that defendants specifically intended that their customers would infringe, and that those acts constituted infringement." *AgroFresh Inc. v. Essentiv* LLC, C.A. No. 16-662-MN-SRF, 2018 WL 6974947, at *4 (D. Del. Dec. 27, 2018) (citing *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013)); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Actual knowledge or willful blindness may satisfy the knowledge requirement. *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). However, knowledge of the patent without knowledge of infringement is not enough to plead induced infringement. *See Commil USA, LLC v. Cisco Sys. Inc.*, 135 S. Ct. 1920, 1926 (2015).

This is the second round of motion practice in which Vudu seeks to dismiss claims of pre-suit induced infringement. (D.I. 12; D.I. 53) The court previously ruled that the original complaint failed to recite facts from which it could plausibly be inferred that Vudu induced the infringement of the asserted patents. *Helios*, 2020 WL 2332045, *report and recommendation adopted*, 2020 WL 3167641.

In granting the dismissal of the pre-suit inducement claims asserted in the original complaint, this court found that, notwithstanding Vudu's notice that five of the asserted patents existed via the Notice Letter, there was inadequate notice that Vudu's products or actions induced infringement of the patents. *Helios*, 2020 WL 2332045, *report and recommendation adopted*, 2020 WL 3167641. Moreover, the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement. *See Helios*, 2020 WL 3167641, at *2 (quoting *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019)). The court allowed an opportunity for Plaintiffs to file an amended pleading to try to overcome the pleading deficiencies. *Helios*, 2020 WL 2332045, *report and recommendation adopted*, 2020 WL 3167641. However, the court indicated that allowance of amendment does not suggest that the deficiencies could be cured. *Helios*, 2020 WL 3167641, at *2 n.1.

In the instant motion, the court inquired about the scope of relief Vudu seeks through its motion. (10/28/20 Tr. at 6:3–19) Vudu responded there are three grounds on which it moves for dismissal. (*Id.* at 7:5–24) The first two grounds are failure to allege knowledge of the patents-in-suit and failure to allege knowledge of infringement, which relate only to "pre original complaint activities." (10/28/2020 Tr. at 7:5–24; D.I. 54 at 1–3, 8–14) The third ground is failure to adequately allege direct infringement by Vudu's customers. (10/28/2020 Tr. at 7:5–24;

6

D.I. 54 at 3–4, 15–16) However, the third ground "applies both to pre- and post-suit inducement claims." (10/28/20 Tr. 7:21–25)

Prior to addressing each of the three grounds argued by Vudu, the court addresses whether induced infringement is a disputed issue as to the '130 patent asserted in Count VI of the FAC. Plaintiffs argue they have not made any claims of induced infringement in this Count and, therefore, it should not have been included in Vudu's motion. (D.I. 58 at 13–14; D.I. 60, Ex. 1 at 1) Vudu argues otherwise, pointing to paragraphs 327 and 357 of the FAC. (D.I. 59 at 1–2) Nonetheless, as Plaintiffs admit they do not claim induced infringement of the '130 patent, the court recommends granting the Vudu's motion as to count VI.[9] (D.I. 58 at 13–14; D.I. 60, Ex. 1 at 1; 10/28/2020 Tr. at 29:5–8)

### a. Knowledge of the Patents-in-Suit

Vudu argues that Plaintiffs failed to adequately plead Vudu's knowledge of the patents-in-suit for all counts in the FAC. (D.I. 54 at 2, 8–10) In response, Plaintiffs argue: (1) the court previously found that the Notice Letter provided Vudu with pre-suit knowledge of the patents relevant to Counts I and VIII through XI in the original complaint; (2) Vudu's argument is waived as to Counts VIII through XI; and (3) the amended complaint alleges Vudu's knowledge of the patents-in-suit for Counts II through V and VII based on a willful blindness theory. (D.I. 58 at 8, 12–13, 17–19)

As the court previously found with respect to the original complaint, Plaintiffs have adequately pleaded Vudu's pre-suit knowledge of the '736 patent in Count I of the FAC based on the Notice Letter. *Helios*, 2020 WL 2332045, at *3, *report and recommendation adopted*, 2020

---

[9] Vudu has not moved to dismiss Plaintiffs' claims of direct infringement in Count VI, only induced infringement. (D.I. 54 at 4) Accordingly, the court's recommendation with respect to Count VI is limited to induced infringement.

WL 3167641, at *1. The Notice Letter specifically identifies the '736 patent, and the FAC contains no additional facts warranting a deviation from the court's prior conclusion on this issue. (D.I. 45 at ¶¶ 30–88; D.I. 54, Ex. 1) Furthermore, Vudu could have but did not dispute whether the original complaint failed to allege Vudu's pre-suit knowledge of the patents relevant to Counts VIII through XI in asserted therein. *Helios*, 2020 WL 2332045, at *3 n.5 ("Vudu d[id] not challenge the sufficiency of the [original] complaint's allegations regarding Vudu's knowledge of the patents asserted in Counts VIII through XI."). Vudu's briefs do not address its failure to raise this issue earlier or substantively address waiver on this point, and Vudu's counsel acknowledged at oral argument that "[t]he prior time around Vudu did not challenge knowledge with respect to these five[10] patents" without offering any justification.[11] (10/28/2020 Tr. at 21:14–16; *see also* D.I. 54; D.I. 59) Therefore, the court recommends that Vudu's opposition on this point is waived. *See* Fed. R. Civ. P. 12(g)(2); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, C.A. No. 17-1390-LPS-CJB, 2019 WL 8641303, at *3–4 (D. Del. Aug. 7, 2019) (citing *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320–22 & n.5 (3d Cir. 2015) ("Plaintiff's subsequent filing of the FAC and the SAC does not grant Defendants a fresh opportunity to revive arguments that were previously available to them, but that Defendants failed to press."). Thus, the FAC adequately pleads that Vudu had

---

[10] Vudu's reference to five patents includes the '736 patent. (*See* D.I. 54 at 2, 8)
[11] Vudu cites *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, C.A. No. 15-545-SLR-SRF, 2016 WL 1019667 (D. Del. Mar. 15, 2016) in support of its argument that the Notice Letter did not provide notice of the '562 patent, the '805 patent, the '558 patent, and the '493 patent. (D.I. 54 at 8; 10/28/2020 Tr. at 21:16–23:9) *Evolved Wireless* was not briefed before the court's prior Report and Recommendation. (10/28/2020 Tr. at 21:16–21; *see also* D.I. 13; D.I. 17; D.I. 18; D.I. 25; D.I. 26) Because Vudu could have relied upon *Evolved Wireless* to challenge the sufficiency of pre-suit notice in its first motion and because the facts with respect to pre-suit knowledge of the '562 patent, the '805 patent, the '558 patent, and the '493 patent via the Notice Letter have not changed in the FAC, the court recommends that the argument is waived.

knowledge of '562 patent, the '805 patent, the '558 patent, and the '493 patent, the patents relevant to Counts VIII through XI, as of August 23, 2018, the date Vudu received the Notice Letter. *See Helios*, 2020 WL 2332045, at *3 n. 5 ("The [original] complaint allege[d] knowledge of these patents as of the August 23, 2018 [Notice Letter], and the [Notice Letter] specifically identifies the '562 patent, the '805 patent, the '558 patent, and the '493 patent."), *report and recommendation adopted*, 2020 WL 3167641, at *1 ("[T]he [Notice Letter] gave [Vudu] notice that five of the patents existed.").

With respect to Counts II through V and VII, as was the case with the original complaint, the FAC fails to allege Vudu's pre-suit knowledge of the patents relevant to these counts based on the Notice Letter.[12] *See Helios*, 2020 WL 2332045, at *3–4. None of the allegations in the FAC change the court's prior conclusions, and Plaintiffs concede that the FAC does "not allege Vudu had actual knowledge of the patents asserted in Counts II–V and VII based on the Notice Letter" in their answering brief. (D.I. 58 at 18)

Plaintiffs argue that Vudu mischaracterizes their theory of Vudu's pre-suit notice of the patents-in-suit relevant to Counts II through V and VII of the FAC. (D.I. 58 at 8, 18–19) Plaintiffs argue that the following allegations adequately plead Vudu's pre-suit knowledge of the relevant patents-in-suit:

> Vudu has had actual knowledge of or should have had actual knowledge of [the relevant patent] and that its acts were inducing infringement of [the relevant patent] since at least [the issue date of the relevant patent]; or, if not then, since at least the time of receiving the Original Complaint in this matter and [the claim chart exhibit associated with the relevant patent].

---

[12] The respective patents for these counts are as follows: Count II (the '830 patent), Count III (the '660 patent), Count IV (the '414 patent), Count V (the '145 patent), and Count VII (the '373 patent). (D.I. 45) The '830, '660, '414, and '145 patents all issued from applications which postdated the Notice Letter. *Helios*, 2020 WL 2332045, at *3. The Notice Letter identified the application which led to the issuance of the '373 patent, but the '373 patent did not issue until after the Notice Letter was sent. *Id.*

9

(*Id.* at 18–19 (quoting D.I. 45 ¶¶ 83, 141, 155, 199, 213, 257, 314, 377, 421, 479, 537, 595, 653)) Contrary to Plaintiffs' argument and the FAC's allegations, awareness of a patent application does not automatically imply actual knowledge of the patent upon issuance. *See Helios*, 2020 WL 2332045, at *3 (quoting *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018)); *see also Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (concluding that an alleged infringer's "mere alleged awareness of [a] patent application does not imply the requisite knowledge of the existence of the later-issued patent").[13] Accordingly, the court recommends finding that Plaintiffs have failed to establish the requisite knowledge of the patents for the pre-suit induced infringement allegations in Counts II through V and Count VII of the FAC.[14]

### b. Knowledge of Inducement

Vudu argues that the FAC, like the original complaint, fails to plausibly allege that Vudu was on notice that its acts induced infringement. (D.I. 54 at 10–14) The Notice Letter has not changed since the original complaint was filed, nor has the court's view of its implications on the sufficiency of the inducement allegations in the FAC compared to those in the original complaint. *See Helios*, 2020 WL 3167641, at *1. "[A]lthough the [Notice Letter] gave [Vudu] notice that five of the patents existed, it did not explain how [Vudu's] products or actions infringed the patents and therefore did not provide adequate notice that [Vudu's] products or actions constituted or caused infringement of the patents." *Id.*

---

[13] Plaintiffs point to no other source beyond the Notice Letter or original complaint for the allegations of Vudu's knowledge of the patents that issued after the Notice Letter.

[14] The court also recommends granting Vudu's motion on other grounds as articulated in sections IV.b & IV.c, *infra*.

Vudu also argues that the pre-suit communications and relevant allegations in the FAC fail to allege facts giving rise to the plausible inference that Vudu knew: "(i) practicing the MPEG-DASH standard would necessarily infringe the asserted patents; (ii) Vudu infringed the asserted patents; or (iii) which of Vudu's specific products or platforms allegedly infringed the patents." (D.I. 59 at 2) Plaintiffs argue that Vudu's argument fails to address the "totality" of the actual knowledge of infringement allegations in the FAC, like "Vudu's intimate knowledge of MPEG-DASH and how Vudu's streaming VOD complied with MPEG-DASH." (D.I. 58 at 19–20 (citing D.I. 45 at ¶¶ 40, 99, 157, 215, 272, 379, 436, 494, 552, 610)) However, Vudu does address the MPEG-DASH standard allegation in the FAC and cites Federal Circuit authorities[15] to argue that such allegations insufficiently allege pre-suit knowledge of infringement. (D.I. 54 at 10–14; D.I. 59 at 2–3) By contrast, Plaintiffs fail to directly address the Federal Circuit cases that Vudu cites on this issue. (D.I. 58 at 19–20)

Although "a district court may rely on an industry standard in analyzing infringement . . . in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010). Where "an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement," or where "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section," a plaintiff may not "establish infringement by arguing that the product admittedly practices the standard, therefore it infringes." *Id.* at 1327–28. Thus, "where, but only

---

[15] *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321 (Fed. Cir. 2010); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004); *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380 (Fed. Cir. 2020).

11

where, a patent covers mandatory aspects of a standard, is it enough to prove infringement by showing standard compliance." *Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*, 967 F.3d 1380, 1384 (Fed. Cir. 2020).

Allegations that the patents-in-suit "claim technologies fundamental to Dynamic Adaptive Streaming over HTTP ('DASH')," which "has been standardized in the ISO/IEC 23009 standards," are insufficient, by themselves, to put Vudu on notice of its alleged infringement. (*See* D.I. 45 at ¶¶ 22–23) The Notice Letter does not describe the standard in detail nor does it specifically state that Vudu's use of the standard necessitated infringement; therefore, it fails to put Vudu on notice of the alleged infringement.[16] *See Godo Kaisha*, 967 F.3d at 1384; *Fujitsu*, 620 F.3d at 1327–28. Further, at oral argument, the court asked Plaintiffs' counsel whether there are allegations in the FAC which identify "a pre-suit communication that explains how the patents read on any DASH standard." (10/28/2020 Tr. at 39:9–12) Plaintiffs' counsel responded that "[t]here is not and that's why we're talking about willful blindness." (*Id.* at 39:14–15) Counsel also noted that "some portions of the standard are optional." (*Id.* at 44:3–4) Therefore, the FAC fails to allege Vudu's actual pre-suit knowledge of infringement of the patents-in-suit.

### c. Willful Blindness

A plaintiff may plead the knowledge requirement of induced infringement in the alternative by alleging that the defendant was willfully blind. *See Global-Tech*, 563 U.S. at 768. "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 769. A willfully blind defendant must (1) "subjectively believe that there is a high

---

[16] At oral argument Plaintiffs' counsel admitted that "nothing in the [FAC] is premised on purely the notion that there's standard essentiality." (10/28/2020 Tr. at 43:10–12)

probability that a fact exists," and (2) "take deliberate actions to avoid learning of that fact." *Id*. at 769–70.

As an alternative to alleging Vudu's actual pre-suit knowledge of the patents relevant to Counts II through V and VII of the FAC, Plaintiffs argue that the FAC sufficiently alleges Vudu's pre-suit knowledge of the patents asserted in these counts based on a willful blindness theory. (D.I. 58 at 8, 18–19 (citing D.I. 45 ¶¶ 141–44, 199–202, 257–60, 421–24); 10/28/2020 Tr. at 31:6–11) However, the FAC contains no plausible allegation which would permit the court to infer that Vudu "purposefully avoided knowledge" of the patents relevant to Counts II through V and VII before the date Plaintiffs filed the original complaint. *See MONEC*, 897 F. Supp. 2d at 234 (concluding that the pleading failed to allege knowledge of a patent via willful blindness where the allegations did "not suggest that [the defendants] purposefully avoided knowledge" of the asserted patent). Accordingly, as with Plaintiffs' actual knowledge theory with respect to Counts II through V and VII discussed in section IV.a, *supra*, the FAC fails to plausibly allege Vudu's pre-suit knowledge of the patents relevant to these counts based on willful blindness. *See id.*

Plaintiffs also argue that the FAC sufficiently alleges Vudu's pre-suit knowledge of infringement via willful blindness. (D.I. 58 at 9–11; 10/28/20 Tr. at 31:6–11) In its reply brief, Vudu argues for the first time that the FAC fails to adequately plead pre-suit knowledge of infringement via willful blindness. (D.I. 59 at 4–6) Vudu failed to specifically dispute the sufficiency of the FAC's willful blindness allegations in its opening brief. (*Id.* at 4–5) Vudu argues that it did not "distinguish between actual knowledge and willful blindness because, under either theory," the FAC fails to sufficiently allege notice of infringement. (D.I. 59 at 4–5) Because Vudu relies in its reply brief upon the same arguments it made in its opening brief and

13

because it has not improperly reserved material for its reply brief, the court will consider both sides' arguments on willful blindness. *See* D. Del. LR 7.1.3(c)(2).

The court previously recommended that the original complaint failed to "adequately plead knowledge based on willful blindness" because it did not "allege that Plaintiffs identified the bases of their infringement positions in response to Vudu's communications." *Helios*, 2020 WL 2332045, *9 (noting that "reluctance to engage in licensing discussions following Plaintiffs' initial correspondence does not satisfy the Supreme Court's requirement of 'active efforts by an inducer to avoid knowing about the infringing nature of the activities'") (quoting *Global-Tech*, 563 U.S. at 770).

The FAC alleges Vudu's knowledge of infringement based on the following factual allegations: Vudu used the MPEG-DASH standard to offer streaming VOD for more than two years before it received the Notice Letter. (D.I. 45 at ¶ 40) The Notice Letter described plaintiff Helios as the "worldwide exclusive licensee of patents and patent applications relating to [MPEG-DASH]" and specifically identified ISO/IED 23009-1 as the relevant MPEG-DASH standard for the asserted patents and Vudu's accused VOD streaming offerings. (*Id.* at ¶¶ 41–42) The patents and patent applications identified in the Notice Letter were labeled "U.S. DASH Patent" or "U.S. DASH Pending Patent Applications" and were described as being within Plaintiffs' "DASH Patent Portfolio." (*See, e.g.*, *id.* at ¶¶ 85, 104) The FAC concludes, therefore, that it was reasonable to infer that Plaintiffs were contending in the Notice Letter that the asserted patents "were essential to Vudu's" use of the MPEG-DASH standard.[17] (*See e.g.*, D.I. 45 at ¶¶ 40–47, 85, 104)

---

[17] These factual allegations are incorporated into every relevant substantive count of the FAC. (*See* D.I. 45 at ¶¶ 30, 89, 147, 205, 263, 369, 427, 485, 543, 601)

Despite these additional allegations, however, Plaintiffs' willful blindness theory fails.[18] Plaintiffs argue that the FAC's alternate theory of willful blindness passes muster because so many detailed paragraphs have been added since the original complaint. (D.I. 58 at 3–4, 8–11, 19–20) However, the length of the pleading has no bearing on whether it is facially plausible. Furthermore, Plaintiffs' allegations rest on a conclusory inference: because the patents-in-suit are standard essential patents and Vudu provided streaming VOD that utilized the standard, it should be automatically inferred that Vudu was willfully blind to the asserted patents and the induced infringement of those patents. (*See e.g.*, D.I. 45 at ¶¶ 40–47, 85, 104) Plaintiffs' willful blindness theory fails, however, for the same reasons Plaintiffs' actual knowledge theory fails. The FAC concludes that Vudu actively avoided knowing of the infringement without alleging facts supporting reasonable inferences that would permit such a conclusion. As already noted, Plaintiffs' counsel stated that "some portions of the standard are optional." (10/28/2020 Tr. at 44:3–4) However, the FAC does not contain any factual allegation that Vudu practiced optional portions of the standard. Nor does it contain other factual allegations which would permit the reasonable inference that practicing the MPEG-DASH standard automatically infringed the asserted patent. Therefore, it is not reasonable to infer that Vudu took "deliberate actions" to avoid learning about the alleged infringement. *See Global-Tech*, 563 U.S. at 769–70; *see also Fujitsu*, 620 F.3d at 1327–28 (noting that where "the relevant section of the standard is optional,

---

[18] At oral argument, Plaintiffs' counsel cited D.I. 45 ¶¶ 38–75 and 83–86 as allegations added to the FAC which permit the court to infer that Vudu actively avoided learning of the alleged infringing conduct, as compared with the allegations and arguments the court already addressed in its prior Report and Recommendation. (10/28/2020 Tr. at 33:14–38:24, 58:7–24) However, those allegations narrate Plaintiffs' attempt to negotiate a licensing deal with Vudu and Vudu's reluctance to engage in such negotiations, which, as the court previously held, does not amount to "active efforts by an inducer to avoid knowing about the infringing nature of the activities." *See Helios*, 2020 WL 2332045, at *9 (quoting *Global-Tech*, 563 U.S. at 770).

and standards compliance alone would not establish that the accused infringer chooses to implement the optional section," a plaintiff may not "establish infringement by arguing that the product admittedly practices the standard, therefore it infringes").

Because the FAC fails to plausibly plead Vudu's pre-suit knowledge of infringement of the patents-in-suit, by either actual knowledge as articulated in section IV.b, *supra*, or willful blindness, the court recommends granting Vudu's motion to dismiss Plaintiffs' pre-suit induced infringement claims in Counts I through V and VII through XI.

### d. Direct Infringement by Vudu Customers

In this second round of Rule 12(b)(6) motion practice, Vudu argues for the first time that the FAC lacks factual allegations that any customer actually used Vudu's accused product to directly infringe any of the asserted patents. (D.I. 54 at 15–16) Despite being able to do so,[19] Vudu did not dispute the sufficiency of the factual allegations in the original complaint with respect to direct infringement by Vudu's customers. *See Helios*, 2020 WL 2332045, at *2 n.4 ("The parties do not dispute the adequacy of Plaintiffs' allegations of direct infringement."). In addition, Vudu has not directed the court to new facts alleged in the FAC that it could not have addressed in the first round of Rule 12(b)(6) motion practice. *Cf. Sunoco Partners*, 2019 WL 8641303, at *4 (analyzing the merits of Rule 12(b)(6) defenses raised for the first time related to new patent infringement claims in an amended complaint because "the current Motion was the

---

[19] Vudu does not dispute that it did not raise this argument in its prior motion. (D.I. 59 at 8) Instead, Vudu argues that even if it could have raised this argument earlier, its argument is permissible now under *Leyse v. Bank of America National Association*, 804 F.3d 316 (3d Cir. 2015). (D.I. 59 at 8–9) However, *Leyse* supports the conclusion that Vudu waived its argument. In *Leyse*, the Third Circuit "emphasize[d] that district courts should enforce Rule 12(g)(2)" because "over the long term, stringent application of Rule 12(g)(2) may motivate defendants to consolidate their arguments in a single pre-answer motion." *Leyse*, 804 F.3d at 322 n.5; *see also Sunoco Partners*, 2019 WL 8641303, at *3 (analyzing and applying *Leyse*).

16

first opportunity" for the defendants to raise those defenses). Therefore, Vudu's argument regarding the sufficiency of the FAC's allegations regarding direct infringement by a Vudu customer is waived.[20] *See* Fed. R. Civ. P. 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion"); *Sunoco Partners*, 2019 WL 8641303, at *3 ("[P]ursuant to Rule 12(g)(2), Defendants should not be allowed to raise this previously-available argument in a subsequent Rule 12(b)(6) motion.").

Vudu argued its only basis for dismissing Plaintiffs' post-suit induced infringement claims is the FAC's "failure to allege adequately direct infringement by a customer." (10/28/2020 Tr. at 7:5–24, 23:10–18) Because Vudu waived its argument on this point, the court recommends denying Vudu's motion to dismiss Plaintiffs' post-suit induced infringement claims. *See also* Helios, 2020 WL 2332045, at 5 (citing *E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, C.A. No. 11-773-SLR-CJB, 2012 WL 4511258, at *7 n.6 (D. Del. Sept. 28, 2012) ("Whereas an original complaint alleging induced infringement based on post-filing knowledge is necessarily forward-looking, an amended pleading looks back to conduct that actually occurred since the filing of a prior version of the complaint.").

## V. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART and DENY-IN-PART Vudu's motion to dismiss (D.I. 53) without prejudice as follows:

   a. GRANT Vudu's motion with respect to the FAC's induced infringement claims in Count VI;

---

[20] Even if the court did not find Vudu's argument waived, the arguments it makes are more in the nature of a factual attack on infringement, *i.e.*, operation of the "Watch" or "Watch Free" buttons, which are not appropriate at this stage of the case. (*See* D.I. 54 at 4, 15–16)

17

    b. GRANT Vudu's motion with respect to the FAC's pre-suit induced infringement claims in Counts I–V and VII–XI; and

    c. DENY Vudu's motion with respect to the post-suit inducement claims in Counts I–V and VII–XI.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 26, 2021

                                              Sherry R. Fallon
                                              UNITED STATES MAGISTRATE JUDGE